J-S59032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ICEHOUSE, LLC, FTGP,LLC AND COHEN & WILLWERTH, P.C. | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| JOHN SCOTT | : : | |
| Appellant | : | No. 389 EDA 2017 |

Appeal from the Order December 12, 2016
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  June Term 2015 No. 02805

BEFORE:   BENDER, P.J.E., OTT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                **FILED DECEMBER 22, 2017**

Appellant, John Scott, appeals from the order denying his petition to strike or open the judgment of non pros entered by the Philadelphia County Court of Common Pleas in his wrongful use of process action against Appellees, Icehouse, LLC ("Icehouse"), FTGP, LLC ("FTGP"), and Cohen & Willwerth, P.C. ("Law Firm").  Appellant claims that the trial court erred in entering the judgment of non pros and denying his petition to open.  We affirm.

The disputes between Appellant and Appellees arise from a development project proposed by Appellees Icehouse and FTGP.  Appellant

_____

[*] Former Justice specially assigned to the Superior Court.

opposed the projects, and in 2010, he successfully appealed a Philadelphia Zoning Board of Adjustment ("ZBA") determination in the Commonwealth Court. Icehouse and FTGP subsequently submitted a new proposal to the ZBA, which granted a variance. In 2012, Appellant appealed the ZBA's determination ("Zoning Appeal"). The Court of Common Pleas concluded that Appellant lacked standing and quashed his appeal on January 9, 2013. Appellant appealed that order to the Commonwealth Court.

On March 6, 2013, Appellees Icehouse and FTGP, though their counsel, Appellee Law Firm, commenced an action for abuse of process against Appellant ("Icehouse Action"). Appellant filed preliminary objections, and on June 17, 2013, the trial court dismissed the Icehouse Action without prejudice. The court concluded that Appellee's claims were premature in light of Appellant's pending Zoning Appeal. No appeals were taken from the order dismissing the Icehouse Action.

On October 10, 2014, the Commonwealth Court reversed the quashal of the Zoning Appeal, concluding that the issue of Appellant's standing was waived. *Scott v. City of Philadelphia, Zoning Bd. of Adjustment*, 88 A.3d 1071, 1079 (Pa. Commw. Ct. 2014), *rev'd and remanded*, 126 A.3d 938 (2015). On November 25, 2014, the Pennsylvania Supreme Court granted allowance of appeal from the Commonwealth's Court order.

On June 22, 2015, Appellant commenced the instant action by filing praecipes for the issuance of writs of summons against several defendants,

- 2 -

including the above-captioned Appellees.[1]  Appellant thereafter revived the writs of summons on a timely basis, but did not file a complaint.

On October 29, 2015, four months after Appellant commenced the instant action, the Pennsylvania Supreme Court reversed the Commonwealth Court's decision in the Zoning Appeal.  *Scott*, 126 A.3d at 950.  The Court held that the Commonwealth Court erred in concluding that standing was a waivable issue and remanded for further consideration of whether Appellant possessed standing to proceed in the Zoning Appeal.  *Id.*

On December 17, 2015, the trial court issued a case management order in the instant matter and listed the case for the September 2016 trial term.  Counsel from Appellee Law Firm entered an appearance on behalf of "all Defendants" on April 12, 2016.  On April 13, 2016, Appellant filed a motion for extraordinary relief to extend the pretrial deadline due to the pending Pennsylvania Supreme Court's decision in the Zoning Appeal.  Appellees opposed relief and noted that no complaint had been filed.  On May 2, 2016, the trial court denied Appellant's motion for extraordinary relief and on May 18, 2016, denied Appellant's motion for reconsideration.  Less than one month later, Appellant sought a stay noting, *inter alia*, that in

_____

[1] In addition to Appellees, Appellant sought writs of summons against EPDG LP, FT Holdings LP, and Paul J. Cohen, Esq. ("Cohen").  Cohen appears to be part of Appellee Law Firm.  Appellant alleges Appellee Icehouse also does business as EPDG LP and that Appellee FTGP also does business as FT Holdings LP.

March of 2016, he had been "arrested" for attempting to extort a settlement from Appellees in the zoning matter. The court denied a stay on June 21, 2016, and subsequently denied Appellant's motion to certify that order for an interlocutory appeal.[2]

On September 12, 2016, Appellant filed a praecipe to reissue the writs of summons and to add a defendant, James Maransky. On September 14, 2016, the trial court issued a notice of trial attachment listing the matter for trial on September 20, 2016. Two days later, counsel from Appellee Law Firm entered an appearance on behalf of Maransky and filed a motion for extraordinary relief seeking a sixty-day continuance for, *inter alia*, the filing of a complaint in order to prepare a defense. Appellant did not oppose the motion.[3] The trial court denied Appellees' motion on September 19, 2016, one day before the scheduled trial date.

The following day, Appellant filed a complaint in the instant matter asserting a claim for "Wrongful Use of Civil Proceedings/Dragonetti Act"[4]

---

[2] Appellant appealed from the order denying a stay. This Court quashed that appeal on September 16, 2016. Order, 2350 EDA 2016 (filed Sept. 16, 2016).

[3] Appellees also apparently mailed a letter dated September 16, 2016, of its intention to praecipe for entry of judgment of non pros within ten days. Appellees' Resp. to Appellant's Pet. to Strike Non Pros, 10/24/16, Ex. C.

[4] 42 Pa.C.S. §§ 8351-8355.

against Appellees and Cohen.[5]   Appellant's Compl., 9/20/16, at 7 (unpaginated).   Later that day, the parties appeared before the trial court, and the court asked counsel for Appellant why a complaint was not filed. N.T., 9/20/16, at 4.  The following exchange occurred:

> [Counsel for Appellant:] Well, Your Honor, a Complaint—a Complaint was filed—
>
> The Court: Don't tell me it was filed today or yesterday.
>
> A: It was filed earlier this morning, but we encountered a number of delays because my—my client is involved in concurrent litigation [*i.e.*, the Zoning Appeal] that is going on through the Commonwealth Court, litigation stemming from zoning appeals that is the genesis of this whole case, and that litigation is still pending before the Commonwealth Court.
>
>    He is—we also had some delays in attempting to—
>
> The Court: All right.  There is an allegation of wrongful abuse of process, is there not, in this matter?
>
>    And I am not sure [Appellant] hasn't wrongfully abused process by filing a Complaint on the day of trial.
>
>    Now the question I have for you, in a wrongful abuse of process case, there has to be a satisfactory conclusion on the part of the [Appellant] in this matter.
>
> A: Yes, Your Honor.  And [Appellant] in the underlying litigation, that litigation—his preliminary objections were sustained by the [t]rial [c]ourt in that matter [*i.e.*, the Icehouse Action].

---

[5] The complaint did not specifically name Maransky as a defendant, but referred to him in the ensuing allegations.

That was a case in which the current [Appellees] had brought an abuse of process claim against my client, which ultimately was—my client prevailed upon preliminary objections, which was sustained by the [t]rial [c]ourt.

In the meantime, the underlying litigation which was my client's appeals of zoning variances up through Common Pleas and through the Commonwealth Court, he actually went up to the Supreme Court. The Supreme Court bounced it back to the Commonwealth Court, so he is still seeking resolution on that [*i.e.*, the Zoning Appeal].

In the meantime, there is a related criminal prosecution of my client in, I guess, conjunction with all of this zoning related litigation that we were hoping would have concluded by now, but it hasn't.

\*     \*     \*

The Court: I'm ready to no[n] pos this case on motion for what I consider an abuse of process.

This case started in—the date of filing—

[Counsel for Appellees]: Your Honor, I believe it was June 25th.

The Court: Filing day was June 22, 2015. The trial date was given on a date certain on this case on the 20th of September. No complaint was filed. It was issued by praecipe writ of summons which normally is a temporary hold to avoid the statute of limitations issue and then nothing else happened.

\*     \*     \*

[Counsel for Appellant]: Well, Your Honor, we were attempting to—to use a writ of summons to preserve my client's rights by preserving the statute of limitations.

The Court: But you didn't have a cause of action when you filed the summons.

- 6 -

[Counsel for Appellant]: Well, Your Honor, I think that we—we had a cause of action based on that my client had prevailed at the underlying litigation [*i.e.*, the Icehouse Action] to this case, which was [Appellees]—the suit [Appellees] had filed against my client last year, 2014, 2015.  2015 for abuse of process, that was dismissed on POs.

The Court: [to Counsel for Appellant], I have not heard a legitimate reason for you not filing the Complaint in this case.

A: Well, Judge—

The Court: I'm waiting over—15 months has it been since you filed the writ and summons and never filed the Complaint?

Went through pretrial conferences and all that material and then I get a call from the Supervising Judge that said no Complaint has been filed in this case.

A: Your Honor, we filed a motion to stay the proceedings.

The Court: Which were denied?

A: Yes.

The Court: Because you had no reason to stay the proceedings.

A: And we petitioned the Superior Court to review that denial of motion to stay with an eye towards appealing it as an interlocutory order should the Superior Court pick that up.

And we did file a Complaint in good faith because we do want to proceed with this.  We do not want—our goal was not to be no[n] pros.  Our goal was to proceed with this.

We are also—a big concern that my client—that there may be additional reasons that [Appellees] may come up with to attempt to prosecute him further for statements that he makes in—in a pleading, which sounds ridiculous if

- 7 -

you think about it, but that's what has been going on already with—with him, you know, over the past several months and that was another reason that we—we were hesitant to file. We wanted to wait until that criminal matter was resolved.

[Counsel for Appellees]: Your Honor, I move for no[n] pros.

The Court: All right. I'm going to grant the motion for no[n] pros.

You have time to file a motion to lift the no[n] pros and there had better been [sic] a better explanation for not filing a Complaint than what I heard in court this morning.

N.T. at 4-10.

On October 1, 2016, Appellant filed a petition to open the judgment of non pros entered by the trial court. He averred that: (1) he acted diligently in serving and reviving the writs of summons; (2) the Pennsylvania Supreme Court decision in ***Villani v. Seibert***, 159 A.3d 478 (Pa. 2017), was pending; and (3) he was criminally charged with extortion related to the Zoning Appeal. Appellant's Pet. to Open J. for Non Pros, 10/1/16, at 2-5, 7 (unpaginated). Appellant further emphasized that the longest period of docket inactivity was forty-six days, and that Appellees did not take steps to require the filing of a complaint. ***Id.*** at 6, 8. Appellant thus claimed that the delay was reasonable because he acted within his rights to delay the filing of a complaint to await developments in the law and avoid incriminating himself. ***Id.*** at 7-8. Appellant also asserted that Appellees contributed to the delay by failing to maintain proper addresses, which

delayed service of the writs, and that Appellees could not claim prejudice because they failed to seek a rule requiring the filing of a complaint. *Id.* at 8. Lastly, Appellant asserted that his present cause of action was meritorious and attached his expert's opinion on the merits of the claim. *Id.* at 8.

Appellees filed a response to Appellant's petition to open the judgment requesting that the trial court deny relief. They asserted, however, that they "did not file the rule [requiring a complaint be filed] because it would have prejudiced Defendant Cohen's attempt to gain admission to the New York bar and have raised his malpractice insurance . . . ." Appellees' Answer to Appellant's Pet. to Strike Non Pros, 10/24/16 at 4 (unpaginated).

The trial court denied Appellant's petition to open on December 13, 2016. This appeal followed.[6] The trial court did not order a Pa.R.A.P. 1925(b) statement.

Appellant presents the following questions for review:

> 1. Did the [t]rial [c]ourt err as a matter of law and abuse its discretion by ignoring Pa.R.C.P. 237.3 and 3051 when it *sua sponte* suggested, and granted, an oral motion for non-pros and in so doing, deprive the Appellant of his right to proceed under the Dragonetti Act and Pa.R.C.P. 1007(1)?

---

[6] Appellant's notice of appeal also included reference to the trial court's prior interlocutory orders denying Appellant's motion for extraordinary relief, Appellant's motion for reconsideration of the denial of extraordinary relief, Appellant's motion for a stay, and Appellee's motion for extraordinary relief.

2. Did the [t]rial [c]ourt err as a matter of law and abuse its discretion by disregarding the Appellant's rights under the Fifth, and Fourteenth Amendments of the U.S. Constitution and Article I, Section 9 of the Pennsylvania Constitution in forcing the Appellant to proceed despite facing criminal charges brought by the Appellees with regard to the instant matter?

3. Did the [t]rial [c]ourt err as a matter of law and abuse its discretion by ordering a judgment of non-pros and denying a petition to open that judgment based upon the characterization of the Appellant's main cause of action as premature or non-existent?

4. Did the [t]rial [c]ourt err as a matter of law and abuse its discretion by finding that a delay requested by Appellee, Cohen would be prejudicial and in failing to acknowledge Cohen's attempts to conceal the instant litigation from the New York State Bar and his insurer when it found this prejudice?

Appellant's Brief at 4.

This Court has stated that

A request to open a judgment of *non pros*, like the opening of a default judgment, is in the nature of an appeal to the equitable powers of the court and, in order for the judgment of *non pros* to be opened, a three-pronged test must be satisfied: 1) the petition to open must be promptly filed; 2) the default or delay must be reasonably explained or excused; and 3) facts must be shown to exist that support a cause of action. A petition under Pa.R.C.P. 3051 is the only means by which relief from a judgment of *non pros* may be sought. . . . Finally, a trial court's decision to deny a petition to open or strike a judgment of *non pros* is reviewed pursuant to an abuse of discretion standard.

***Bartolomeo v. Marshall***, 69 A.3d 610, 613-14 (Pa. Super. 2013) (citations

omitted).

Pennsylvania Rule of Civil Procedure 3051 states, in relevant part:

(a) Relief from a judgment of non pros shall be sought by petition. All grounds for relief, whether to strike off the judgment or to open it, must be asserted in a single petition.

(b) Except as provided in subdivision (c),[7] if the relief sought includes the opening of the judgment, the petition shall allege facts showing that

(1) the petition is timely filed,

(2) there is a reasonable explanation or legitimate excuse for the conduct that gave rise to the entry of judgment of non pros, and

(3) there is a meritorious cause of action.

*Note*: See Rule 237.3 for special provisions relating to relief from a judgment of non pros entered pursuant to Rule 1037(a).

Pa.R.C.P. 3051(a)-(b).

Appellant first contends that the trial court subverted the rules of civil procedure governing the commencement of an action and the filing of a complaint by raising his failure to file a complaint *sua sponte*. Appellant's Brief at 11. He further asserts that relief should have been afforded to him

---

[7] Subdivision (c) to Rule 3051 pertains to the opening of the judgment of non pros for inactivity as governed by ***Jacobs v. Halloran***, 710 A.2d 1098 (Pa. 1998). Pa.R.C.P. 3051(c) & note. However, this case does not present facts amounting to inactivity.

under "the bright-line test of Pa.R.C.P. 237.3(b)(1)."[8] *Id.* at 14. No relief is due.

Generally, the procedures for entering and seeking relief from a judgment of non pros for the failure to file a complaint are set forth in Pa.R.C.P. 237.1, 237.3, and 1037. Rule 1037 permits the defendant to have the prothonotary enter a rule for the filing of a complaint. Pa.R.C.P. 1037(a). If the complaint is not filed within twenty days of the service of the rule, the defendant may praecipe to have the prothonotary enter a judgment of non pros. Pa.R.C.P. 1037(a). Rule 237.1 provides a procedural safeguard against snap judgments under Rule 1037(a) by requiring the defendant to include a certification that written notice of intent to file the praecipe was mailed or delivered to the plaintiff. Pa.R.C.P. 237.1(a) & cmt.

Rule 237.3 provides that a petition for relief of judgment of non pros entered pursuant to Rule 237.1 shall include a verified copy of the complaint the plaintiff wishes to file. Pa.R.C.P. 237.3(a). Moreover, Rule 237.3 provides a bright-line rule requiring the trial court to open the judgment if

_____

[8] Appellant cites to the current version of Rule 237.3(b)(1), which became effective January 1, 2017. The differences between the current Rule 237.3(b)(1) and former version of Rule 273.3(b) are not material to this appeal. **Compare** Pa.R.C.P. 237.3(b)(1) ("If the petition is filed within ten days after the entry of a judgment of non pros on the docket, the court shall open the judgment if the proposed complaint states a meritorious cause of action") (eff. Jan. 1, 2017) **with** Pa.R.C.P. 237.3(b) ("If the petition is filed within ten days after the entry of the judgment on the docket, the court shall open the judgment if the proposed complaint . . . states a meritorious cause of action . . .") (subsequently amended eff. Jan. 1, 2017).

the petition is filed within ten days of the entry of the judgment and the proposed complaint states a meritorious cause of action. Pa.R.C.P. 237.3(b); *see also Simmons v. Luallen*, 763 A.2d 810, 812 (Pa. 2000) ("Although Rule 237.3 does not alter the law of opening judgments as reflected in Rule 3051(b), it presupposes that a petition to open filed within the ten-day period is timely or prompt and that a reasonable explanation or excuse for the delay exists.").

However, Rules 237.1(a) and 1037(a) apply when there is no involvement by the trial court. *See* Pa.R.C.P. 237.1(a), 1037(a) (permitting defendant to praecipe for rule and entry of judgment with the prothonotary). Rule 237.1 does not apply when a judgment is entered by an order of the court. Pa.R.C.P. 237.1(b)(1) ("This rule does not apply to a judgment entered . . . by an order of the court[.]"). Because Rule 237.3 governs relief from the entry of a judgment of non pros pursuant to Rule 237.1, *see* Pa.R.C.P. 273.3(a), it follows that Rule 237.3 does not apply when a court orders the entry of the judgment. Thus, Rules 237.1, 237.3, and 1037(a) do not apply when the trial court enters a judgment of non pros. *See* Pa.R.C.P. 237.1(a), (b)(1), 273.3(a), 1037(a).

Instantly, Appellant commenced an action that proceeded to a scheduled trial date. Appellant did not file a complaint until the day he appeared for trial, and the court entered an order dismissing the action for failure to file a complaint. Under these circumstances, we conclude that the

trial court did not err in *sua sponte* considering whether Appellant's failure to file a complaint before the scheduled trial date was a basis for non pros. ***Cf.*** Pa.R.C.P. 218(a) ("[w]here a case is called for trial, if without satisfactory excuse a plaintiff is not ready, the court may enter a nonsuit on motion of the defendant or a non pros on the court's own motion."); ***see also Peters Creek Sanitary Auth. v. Welch***, 681 A.2d 167, 171 (Pa. 1996). Accordingly, Appellant's contentions that the trial court erred in raising the issue of the failure to file a complaint or in refusing to open the judgment of non pros under Rule 237.3(b) warrant no relief. ***See*** Pa.R.C.P. 237.1(a)-(b), 273.3(a), 1037(a).

Appellant next argues that the trial court erred in finding that the delay in filing the complaint was not reasonable. He notes that there is "a presumption of a compelling reason for delay . . . in cases awaiting significant developments in the law." Appellant's Brief at 12 (*citing **Marino v. Hackman***, 710 A.2d 1108, 1111 (Pa. 1998)) (emphasis omitted). Specifically, Appellant contends that his delay in filing a complaint was justified by anticipated developments in the law, namely, the pending appeal in ***Villani*** and the institution of criminal proceedings against him. ***Id.***

The trial court noted that "if Appellant reasonably believed he had a cause of action against the Appellees in this matter, it was incumbent upon him to plead his case in a timely fashion." Trial Ct. Op., 3/16/17, at 4.

Furthermore, the court noted that Appellant attempted to have the matter delayed, but was unsuccessful. *Id.* at 4-5. The court concluded:

> Having failed to succeed in his attempts to persuade the [c]ourt to delay the trial, it was not Appellant's privilege to simply wait and see if the prior litigation resolved itself before trial and, if not, to file his complaint at the last moment and demand that the case either proceed in a way that would be prejudicial to the defendants or force the [c]ourt to grant a continuance to remedy a situation that Appellant himself deliberately brought about.

*Id.* at 5. We agree with the trial court.

Appellant's complaint contained a single count for a violation of the Dragonetti Act. It is well settled that

> [t]he Dragonetti Act requires, in pertinent part, the following elements to establish a cause of action under the statute:
>
> > **(a) Elements of action.**—A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:
> >
> > > (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
> > >
> > > (2) The proceedings have terminated in favor of the person against whom they are brought.

*Freundlich & Littman, LLC v. Feierstein*, 157 A.3d 526, 532 (Pa. Super. 2017) (quoting 42 Pa.C.S. § 8351(a)).

Our review of *Villani* belies Appellant's assertion that it constituted a compelling reason for delaying the filing of his complaint.[9] In *Villani*, the plaintiffs, the Seiberts prevailed in an underlying property action commenced by Villani. *Villani*, 159 A.3d at 479. The Seiberts commenced a wrongful use of civil proceedings action against Villani and her attorney for raising frivolous claims during the property action. *Id.* The defendant-attorney filed a preliminary objection asserting that the Dragonetti Act infringed on the Pennsylvania Supreme Court's constitutional authority to regulate the conduct of lawyers. *Id.* at 480. The defendant-attorney thus argued attorneys were immune from liability under the Dragonetti Act. *Id.* The trial court sustained the defendant-attorney's preliminary objection and concluded, "The Dragonetti Act, as it pertains to lawyers, is unconstitutional and unenforceable." *Id.* at 484 (citation omitted). On June 15, 2016, the Pennsylvania Supreme Court granted permission to appeal to consider the following issue:

> Did the trial court err when it held that the Dragonetti Act, 42 Pa.C.S. §8351 *et seq.*, is an unconstitutional infringement upon the Supreme Court's authority to regulate the conduct of attorneys under Article V, §10(c) of the Pennsylvania Constitution such that attorneys are immune from suit for Wrongful Use of Civil Proceedings?

*Villani v. Seibert*, 11 MM 2016 (Pa. June 15, 2016).

_____

[9] Appellant did not raise the pending decision in *Villani* in his prior requests to delay trial.

- 16 -

Although **Villani** signaled a possible significant shift in the law surrounding the Dragonetti Act, the impact on Appellant's claims was more limited. Specifically, **Villani** addressed the contention that the Dragonetti Act was unconstitutional as applied to lawyers. **See id.** **Villani** could have impacted the viability of Appellee's actions against Appellee Law Firm and Cohen. However, the question posed in **Villani** did not alter the fundamental elements of his proposed Dragonetti Act claim or the viability of his claim against the non-attorney Appellees.[10]

With respect to the ongoing criminal matter against him, we sympathize with the apparent dilemma faced by Appellant. However, we discern no basis to agree with his argument that the mere filing of a complaint for a Dragonetti Act violation would require him to incriminate himself. The focus of the pleading would be that Appellees, in the Icehouse Action, acted "in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim" and that the Icehouse Action was terminated in his favor. **See** 42 Pa.C.S. § 8351(a). Indeed, Appellant

_____

[10] We note that the Pennsylvania Supreme Court decided **Villani** on April 26, 2017 and reversed the trial court. **Villani**, 159 A.3d at 493. The Court concluded that the defendant-attorney in that case "failed to establish that the Dragonetti Act clearly and palpably violates the Pennsylvania Constitution, or that this Court should *per se* immunize attorneys, as attorneys, from the application of the substantive tort principles promulgated by the political branch in the Dragonetti Act." **Id.** at 492-93 (footnote omitted).

ultimately filed a complaint on the day of the trial and did not complain that he was required to incriminate himself or expose himself to further criminal sanctions.

Thus, the trial court did not abuse its discretion in determining that Appellant's conduct to "simply wait and see if the prior litigation resolved itself" was unreasonable in light of the facts that a trial date had been set and his previous attempts to seek extensions of time had failed.[11] **See** Trial Ct. Op. at 5. Accordingly, Appellant's second claim warrants no relief.

Appellant's third claim suggests that his action was meritorious and that the trial court failed to balance his Fifth and First Amendments rights implicated in this case. First, because we conclude that Appellant's petition to open did not state a reasonable explanation for the delay, we need not address whether there was merit to his underlying claim. **See** Pa.R.C.P. 3051(b); **Madrid v. Alpine Mountain Corp.**, 24 A.3d 380, 384 (Pa. Super. 2011) ("Where a party fails to provide a reasonable excuse for the delay in

---

[11] Appellant has abandoned his prior assertion that it was reasonable to delay filing his complaint based on developments in the Zoning Appeal. We add, however, that following the October 29, 2015 remand from the Pennsylvania Supreme Court, the Commonwealth Court, on July 12, 2017, affirmed the trial court's determination that Appellant lacked standing to proceed in the Zoning Appeal. **Scott v. City of Philadelphia**, 154 C.D. 2013, 2017 WL 2960612 (Pa. Cmwlth. July 12, 2017) (unpublished memorandum). Appellant filed a petition for allowance of appeal in the Pennsylvania Supreme Court. **Scott v. City of Philadelphia**, 466 EAL 2017 (Pa. filed Dec. 17, 2017).

prosecution of the underlying claim, a petition to open is properly denied.").

Therefore, we decline to consider these issues.[12]  **See** Pa.R.C.P.  3051(b);

**Madrid**, 24 A.3d at 384.

Lastly, Appellant claims that the trial court failed to acknowledge that

Appellees proceeded with unclean hands and failed to establish prejudice.

Appellant's Brief at 22.  Appellant emphasizes that Appellees admitted they

did not demand a complaint be filed due to concerns regarding Cohen's

admission to the New York bar and his malpractice insurance.  **Id.**

Appellees respond that they had no obligation to urge the

advancement of Appellant's action by seeking a rule to have a complaint

issued.  Appellees further contend that its motives regarding Cohen did not

rise to the level of fraud or wrongdoing.  Appellees conclude that prejudice

was established because they were forced to go to trial without pleadings.

We agree with Appellees.

In **Jacobs**, the Pennsylvania Supreme Court summarized the unclean

hands doctrine:

> A party who seeks the equitable relief provided by the
> entry of a judgment of non pros must do so with clean
> hands.  The doctrine of unclean hands is

---

[12] In any event, as noted above, Appellant proffered no basis to support his claim that the filing of a complaint required him to incriminate himself. Appellant's further assertion that proceeding in the instant action was necessary to vindicate his First Amendment rights with respect to the Zoning Appeal goes to possible bases of the underlying claim.

> far more than a mere banalty. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. . . . Thus while 'equity does not demand that its suitors shall have led blameless lives' . . . as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue.

*Jacobs*, 710 A.2d at 1103 (citations omitted).

In *Jacobs*, the Court concluded that a defendant's "dishonesty regarding the identity of the driver of the vehicle [in a personal injury action] constitutes bad faith which is directly relevant to the delay in [the] prosecution from which she seeks relief." *Id.* at 1103. In *Mudd v. Nosker Lumber, Inc.*, 662 A.2d 660 (Pa. Super. 1995), this Court determined that a defendant who requested for a continuance misled the plaintiffs. Although defendant requested the continuance for the apparent purposes of negotiating a settlement agreement, the defendant used the additional time to draft a motion for judgment of non pros. This Court refused to reward the defendant for their tactics. *Mudd v. Nosker Lumber, Inc.*, 662 A.2d 660, 664 (Pa. Super. 1995).

Instantly, Appellees' failure to force Appellant to file a complaint does not rise to the level of fraud or deceit as to the controversy at issue. Appellees were under no obligation to invoke Rule 1037(a) to require

- 20 -

Appellant to file a complaint. Moreover, Appellees did not manipulate the court's trial schedule or delay trial in order to strengthen their position for a judgment of non pros. Although Appellees were prepared to seek a joint continuance before trial, they ultimately acceded to the trial court's strong suggestion to move for non pros, which the court could have also entered on its own accord. Accordingly, we agree with Appellees that their conduct or ulterior motives did not rise to the level of unclean hands.

As to prejudice, this case stands in a somewhat unusual procedural posture because the matter proceeded to a scheduled trial without a complaint being filed until the day of trial. In the context of inactivity, prejudice may be "established by the death or absence of a material witness" or "any substantial diminution of a party's ability to properly present its case at trial." *Jacobs*, 710 A.2d at 1103 (citation and quotation marks omitted). Although Rules 218 and 3051(b) do not refer to prejudice, "prejudice has traditionally been a consideration in all non pros cases." *See Valley Peat & Humus v. Sunnylands, Inc.*, 581 A.2d 193, 196-97 (Pa. Super. 1990) (*en banc*).

> In each type of case, and in each unique factual situation, the general considerations as espoused in the three part test for the entry of a non pros judgment will be given precise definition. While the element of prejudice may be less important in Rule 218 cases, where it has been determined that a plaintiff is not ready for trial without satisfactory excuse, we believe that prejudice must still be considered by the trial court prior to determining, as an equitable matter, that the entry of a non pros judgment is appropriate. To ignore this factor in balancing the equities

- 21 -

in a non pros case, simply because the language of Rule 218 fails to mention prejudice explicitly, would amount to an abuse of the trial court's discretion.

*Id.* at 197. *But see Peters Creek*, 681 A.2d at 171 (noting that a party who files an untimely answer must show just cause for the delay and that "it is only after such a showing has been made that the trial court must require the moving party to demonstrate prejudice resulting from the late pleading"); *Madrid*, 24 A.3d 380, 384 n.4 (declining to consider prejudice under Rule 3051(b)); Pa.R.C.P. 3051(c) & cmt. (noting 3051(c) alters *Madrid* with respect to inactivity).

To the extent it is necessary to consider prejudice, the trial court found that Appellant's failure to file a complaint until the morning of trial resulted in prejudice. We agree. Appellant was aware of the trial date and while all parties sought a continuance, those requests were denied. The failure to file a complaint is fundamental to the orderly administration of the judicial process. The failure to do so until the morning of a scheduled trial presents obvious concerns regarding Appellant's readiness to proceed. Moreover, Appellees had no meaningful opportunity to challenge or answer the complaint and prepare a defense. Appellant's bare assertion that no prejudice resulted from the delay because Appellees did not act earlier to force him to file a complaint does not establish an abuse of discretion on the part of the trial court. Accordingly, we discern no basis upon which to disturb the trial court's balancing of the equities in this case.

Order affirmed.

P.J.E. Bender Joins.

Judge Ott Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:12/22/2017